Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 1613 | **DATE** | August 29, 2000 |
| **CASE TITLE** | US ex rel Richard Reeves v John C. Battles | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]

Memorandum opinion and order entered. Accordingly, petitioner's petition for a writ of habeas corpus is denied.

(11) ☐ For further detail see order attached to the original minute order.

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| X | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 3 0 2000 | |
| | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | ED-7 | | 26 |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING | docketing deputy initials | |
| | | 00 AUG 29 PM 4: 42 | | |
| GDS | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA, ex rel. )
RICHARD REEVES, )
 )
Petitioner, )
 )  No.  99 C 1613
v. )
 )  Judge Robert W. Gettleman
JOHN C. BATTLES, )
 )
Respondent. )

## MEMORANDUM OPINION AND ORDER

Richard Reeves, an Illinois state prisoner who was convicted by a jury of first degree murder, is currently serving a 25 year prison sentence. After an unsuccessful direct appeal and post-conviction petition, Reeves has petitioned this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, arguing that: 1) the evidence was insufficient "to support a conviction for first degree murder beyond a reasonable doubt in that there was no evidence of an intent to commit murder;" and 2) "the trial judge erred when he refused to charge the jury with the Illinois Pattern Jury Instruction defining the offense of involuntary manslaughter when the evidence supported such a claim and the defendant specifically requested the instruction be given." Respondent has answered the petition arguing that petitioner's sufficiency of the evidence claim is procedurally defaulted, and that the jury instruction claim fails to raise a constitutional issue. For the reasons set forth below, the petition is denied.



# Facts[1]

On November 13, 1988, petitioner was drinking at the Fickle Finger Tavern in Chicago Heights, Illinois. Mario Fierro was also there drinking. Betty Howell, the tavern manager went to Fierro and took a beer can away from him, telling him that he had had too much to drink. Fierro had not caused a disturbance, was not loud or boisterous, and made no physical contact with Howell. Petitioner, who was a frequent patron and whom Howell had known for 30 years by the nickname "Crush," then pushed Fierro out of the tavern. Neither Howell, nor Janice Wiley, the bartender, asked petitioner for his help. Neither Howell nor Wiley saw any confrontation between petitioner and Fierro before they went out the front door, and Howell told petitioner that she could handle the situation.

Frank Guiliani, another patron, testified that he saw petitioner and Fierro go out the door. They were holding each other by the arms and were facing each other. Fierro had his back to the door and went out first. Guiliani opened the door and saw petitioner and Fierro in the street. Fierro was on his knees with petitioner in front of him. Guiliani then saw Fierro lying face down in the street and petitioner kicking Fierro in and around the head approximately three times. Although admitting that he had been intoxicated, Guiliani testified that his ability to observe was not impaired.

Petitioner testified on his own behalf. He stated that he went to the Fickle Finger Tavern at 7:30 p.m. Howell, Guiliani and Ray Cioe came in about 45 minutes later. Guiliani was drunk

---

[1]The facts are taken from the opinion of the Illinois Appellate Court, People v. Reeves, No. 1-90-0394 (1st Dist. April 20, 1992), which are presumed to be correct, see Abrams v. Barnett, 121 F.3d 1036, 1038 (7th Cir. 1997), and to which petitioner has raised no objection.

and slurred his words. Howell approached Fierro and told him that he had too much to drink and took his beer. Petitioner then approached Fierro and said "its time to leave," and pointed Fierro to the door. Fierro started walking toward the door. Petitioner followed, then reached around to open the door. Fierro stepped to the sidewalk, turned and flipped the cigarette in petitioner's face and then swung at and hit petitioner. Petitioner retaliated. They fought, rolled around on the ground and then fell into the middle of the street. Petitioner stated "he didn't hit me as many times, probably," but that Fierro hit him in the face and arms and throat and kicked at him in his groin area. Petitioner stated he fought to protect himself because Fierro attacked him. Petitioner admitted that Fierro weighed less than he did (petitioner weighed 250 pounds, Fierro 170 pounds). Petitioner stated that he did not kick Fierro after the fight, but that he may have kicked Fierro in the throat during the fight. On cross examination, petitioner stated that he did not see anyone else strike, kick or punch Fierro, and admitted that he did all three. He admitted that no one asked for his help and that Fierro had not caused a disturbance. He further admitted that punching and kicking someone in the head could cause great bodily harm, and stated that he was trying to hurt Fierro because Fierro was trying to hurt him. Petitioner admitted that Fierro posed no threat to him while he was on the ground.

## Discussion

Petitioner's first argument is that the evidence at trial failed to demonstrate an intent to commit murder beyond a reasonable doubt. Citing <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838 (1999), respondent argues that petitioner procedurally defaulted this claim by raising it in his direct appeal, but failing to raise it in his petition for leave to appeal to the Illinois Supreme Court. Therefore, according to respondent, this court can reach the merits of the claim only if petitioner

3

can demonstrate: 1) adequate cause for failure to raise the claim before the Illinois Supreme Court; and 2) actual prejudice resulting from the default. Farrell v. Lane, 939 F.2d 409, 411 (7th Cir. 1991).

This court does not agree that the claim has been defaulted. In his petition for leave to appeal, petitioner raised as an issue:

> Whether the requisite intent for first degree murder may be inferred merely because a defendant weighed more than the victim and because the defendant admitted that he wanted to hurt the victim because the victim had hurt him.

Although not identically worded, the issue set forth above clearly raises the question whether there was sufficient evidence for the jury to find the degree of intent necessary for a finding of guilty on the first degree murder charge. The court thus concludes that petitioner has not procedurally defaulted his sufficiency of the evidence claim

In reviewing the merits of petitioner's claim, this court must apply 28 U.S.C. § 2254(d)(1), which provides that relief may be awarded only where the state court's adjudication of a petitioner's claim involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. "A federal court engaged in collateral review of a state court's conviction must determine whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Milone v. Camp, 22 F.3d 693, 702 (7th Cir. 1994) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). In the instant case, the Illinois Appellate Court reviewed the evidence of petitioner's conduct and the circumstances surrounding his commission of the crime. Citing People v. Bartall, 98 Ill.2d 294 (1983), it held that a necessary mental state may be inferred from evidence that the defendant voluntarily and wilfully

4

committed an act, the natural tendency of which was to destroy another's life. The jury heard evidence that although of the same height, petitioner was 80 pounds heavier that Fierro, and that petitioner kicked Fierro approximately three times in the head while Fierro lay in the street. Although petitioner denied this, the jury was free to believe Guiliani and disbelieve petitioner. Reviewing this evidence and petitioner's own statement that he was trying to hurt Fierro in the light most favorable to the prosecution leads to the conclusion that a rational jury could have found the essential intent element.

Petitioner's next argument is that the trial court erred by failing to instruct the jury on involuntary manslaughter. Respondent asserts that the claim fails to raise a constitutional issue and is not properly raised in a federal habeas petition which is limited to the question of whether petitioner is in custody in violation of federal law. Coleman v. Thompson, 501 U.S. 722, 730 (1991).

At trial, petitioner requested the involuntary manslaughter instruction as a lesser included offense of first degree murder. Petitioner had also requested and the court agreed to give a self-defense instruction, and a second degree murder instruction based on the mitigating factor of acting under an unreasonable belief that the circumstances would justify or exonerate the killing. The trial court rejected the involuntary manslaughter instruction as inconsistent with petitioner's claim of self-defense, holding that based on petitioner's testimony there was no way a jury could find petitioner not guilty of second degree murder without accepting his theory of self-defense. If the jury accepted self-defense, petitioner could not have been guilty of involuntary manslaughter. The Illinois Appellate Court affirmed, although on slightly different grounds, holding simply that the evidence did not support the requested instruction.

5

Petitioner raises the issue again in this court, arguing that "the trial judge erred when he refused to charge the jury with the Illinois Pattern Jury Instruction defining the offense of involuntary manslaughter when the evidence supported such a claim . . .." Respondent argues that the state appellate court analyzed the claim under state law, and that claims involving allegations of error in giving or failing to give jury instructions in violation of state law cannot form the basis for federal habeas relief. See Estelle v. McGuire, 502 U.S. 62 (1991).

It is true, as respondent argues, that the fact that an instruction was incorrect under state law is not the basis for habeas relief. See Marshall v. Lonberger, 459 U.S. 422, 438 n. 6 (1983). The question for this court, therefore, is whether failure to give the instruction, by itself, so infected the entire trial that the resulting conviction violates due process. Cupp v. Naughten, 414 U.S. 141, 147 (1973).

In Beck v. Alabama, 447 U.S. 625, 638 (1980), the Supreme Court held that a defendant in a capital murder case had a constitutional right to have the jury instructed on a lesser-included offense where evidence supported such an instruction. The Beck court specifically declined to decide whether its holding and rationale extends to non-capital cases. Id. n.14. The circuits have split on this issue, with one holding that it does, see Vujosevic v. Rafferty, 844 F.2d 1023, 1027 (3rd Cir. 1988), while most hold that the failure to instruct on a lesser-included offense never amounts to a constitutional violation. See Bagby v. Sowders, 894 F.2d 792, 797 (6th Cir. 1990); Valles v. Lynaugh, 835 F.2d 126, 127 (5th Cir. 1988); Trujillo v. Sullivan, 815 F.2d 597, 604 (10th Cir. 1987); Peery v. Smith, 810 F.2d 1078, 1080 (11th Cir. 1987). The Seventh and First Circuits have taken a middle ground approach, holding that the failure to give an instruction on a lesser-included offense does not violate the Constitution unless it amounts to a fundamental

6

miscarriage of justice. Robertson v. Hanks, 140 F.3d 707, 710 (7th Cir. 1998) (citing Nichols v. Gagnon, 710 F.3d 1267, 1269 (7th Cir. 1983); Tata v. Carver, 917 F.2d 670, 671 (1st Cir. 1990).

To show a fundamental miscarriage of justice, petitioner must demonstrate that had the omitted instruction been given, the jury probably would have found him guilty of involuntary manslaughter rather than murder. Taylor v. Gilmore, 954 F.2d 441, 451 (7th Cir. 1992); see Steward v. Gilmore, 80 F.3d 1205, 1212 (7th Cir. 1996) (defendant must show that he is actually innocent of the crime for which he is imprisoned). At a minimum, petitioner must show that there was "unequivocally strong" evidence in the record by which a jury could have found each element of the proposed instruction, and that the other evidence does not disqualify him from using the proposed defense. United States ex rel. Perry v. Sielaff, 615 F.2d 402, 403 (7th Cir. 1997). It is not enough merely to show that the trial court should have given the instruction as a matter of state law. Petitioner must also show that had the involuntary manslaughter instruction been given, it is improbable that after considering all the evidence a reasonable jury would have convicted him of murder rather than of involuntary manslaughter. Nichols, 710 F.3d at 1269; Rodriguez v. Scillia, 193 F.3d 913, 917 (7th Cir. 1999).

In the instant case, petitioner wanted to instruct the jury that "a person commits the offense of involuntary manslaughter when he unintentionally causes the death of an individual, by acts which are performed recklessly and are likely to cause death or great bodily harm to another." The trial judge rejected the instruction as inconsistent with petitioner's self-defense theory. Although this court agrees with petitioner that involuntary manslaughter is not always inconsistent with self-defense, petitioner has not directed the court to any evidence in the record from which a reasonable jury could conclude that his actions were performed recklessly as

7

opposed to intentionally. Petitioner's own testimony was that he intended to hit and hurt Fierro because Fierro was trying to hurt him. There was eyewitness testimony that petitioner repeatedly kicked Fierro while Fierro lay face down in the street. Absent evidence to demonstrate that his actions were taken recklessly, petitioner has not demonstrated that it is improbable that a reasonable jury would have convicted him of involuntary manslaughter rather than murder. Therefore, even if this court were to conclude that petitioner has fairly presented to the state court his claim that failure to give the instruction for the lesser included offense violated his right to due process under the Seventh Circuit guidelines set forth in <u>Verdin v. O'Leary</u>, 972 F.2d 1467, 1472-73 (7th Cir. 1992), petitioner has failed to demonstrate a fundamental miscarriage of justice. Accordingly, the petition for a writ of habeas corpus is denied.

## Conclusion

For the reasons set forth above the petition for writ of habeas corpus is denied.

**ENTER:** **August 29, 2000**

_Robert W. Gettleman_
**Robert W. Gettleman**
**United States District Judge**

8